# FOURTH DIVISION
## DOYLE, P. J.,
## MCFADDEN and BOGGS, JJ.

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 18, 2014**

# In the Court of Appeals of Georgia

A13A1845. SMITH v. THE STATE.                                    DO-069 C

DOYLE, Presiding Judge.

Following a jury trial, Renarda Smith was convicted of armed robbery[1] (one count), aggravated assault[2] (three counts), and possession of a firearm during the commission of a felony[3] (four counts). Smith appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to support the verdict, (2) he received ineffective assistance of counsel, and (3) the State improperly intimidated a potential witness and prevented him from testifying. Discerning no error, we affirm.

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-5-21 (a) (1).

[3] OCGA § 16-11-106 (b) (1).

1. When an appellate court reviews the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[4]

So viewed, the evidence shows that one evening at approximately 11:00 p.m., two men armed with pistols entered the Lovers Lane Citgo in Newton County and demanded money from an employee behind the counter. The employee opened the cash register, and one of the robbers took the money. The two men fled in a Jeep Cherokee that was waiting nearby, and a bystander who saw the men exit the store with guns called 911 and followed the Cherokee in her own vehicle. As she followed the Cherokee, police responded, located the Cherokee based on her description, and

---

[4] (Emphasis in original; citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2

executed a stop of the vehicle. Two passengers bailed out of the car and fled on foot; the driver, who was identified as Smith, was handcuffed and arrested at the scene.

Based on these events, Smith was convicted of the indicted crimes. On appeal, he argues that the evidence was insufficient to support the conviction because he was merely present at the scene and did not know that a robbery would be committed. But at trial there was evidence that Smith knew that his two passengers were armed and that he "kind of sort of" knew what they were going to do. This supports a finding that Smith participated in the robbery as the getaway driver. "Any conflicts or inconsistencies in the evidence [were] for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict."[5] Accordingly, this enumeration fails.

2. Smith also contends that his trial counsel rendered ineffective assistance. Under *Strickland v. Washington*,[6] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have

_____

[5] (Citation omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

[6] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

been different if not for the deficient performance.[7] "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case."[8] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[9] In reviewing the trial court's decision, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[10]

(a) Smith first argues that his trial counsel performed deficiently by failing to move to strike a juror for cause. The juror at issue had indicated during voir dire that her husband was related to a trial judge in the same circuit where Smith was tried. Smith's counsel had exhausted peremptory strikes and did not argue that the juror

---

[7] See id. at 688-689, 694-695 (III) (A)-(B).

[8] (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[9] See *Strickland*, supra, 466 U. S. at 697 (IV); *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

[10] (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

should be struck for cause. Nevertheless, during voir dire, the trial court asked the juror whether she felt like she could sit impartially as a juror in the case, and the juror responded affirmatively.

> In light of [this] response[] and the lack of any other evidence in the record that [the] juror[] held a fixed and definite opinion of [Smith's] guilt, the trial court would have acted well within its discretion in denying a motion to strike [the] prospective juror[] for cause. Accordingly, trial counsel did not perform deficiently by failing to make such a motion.[11]

(b) Smith next argues that his trial counsel should have objected to the admission of video recorded interviews of Smith. The video played at trial had a lag time of a few seconds between the audio and video , and Smith now asserts that this undermined the video's probative value (Smith's incriminating statements to police) such that it was substantially outweighed by the danger of unfair prejudice (seeing Smith interviewed in handcuffs by an officer). Nevertheless, at trial, the jury had a transcript to follow along with the video, and the court asked the jury if anyone had a problem following the video. The jury did not express a problem following the

---

[11] (Citation omitted.) *Bester v. State*, __ Ga. __, __ (2) (b) (Case No. S13A1192; decided Nov. 18, 2013).

5

video even with a short delay in the audio. Under these circumstances, the delay itself did not render the video useless or superfluous, as the jury could still view Smith and gauge his demeanor and responses to the interviewer's questions. Further, with respect to viewing Smith in handcuffs, a police witness had already explained that Smith had been handcuffed during his arrest, and the trial court properly instructed the jury on the presumption of innocence. Accordingly, it was not an abuse of discretion for the trial court to admit the video, and its admission does not support Smith's ineffective assistance claim.[12]

(c) Smith last argues that his trial counsel should have called Kennarles Lyles to testify in Smith's defense. "It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics, and that tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances."[13] Here, Smith's trial counsel testified at the motion for new trial hearing that he interviewed the witness prior to trial, and based on that interview, in

---

[12] See *Solis-Morales v. State*, 315 Ga. App. 724, 726 (728 SE2d 253) (2012).

[13] (Citation and punctuation omitted.) *Hubbard v. State*, 285 Ga. 791, 794 (3) (683 SE2d 602) (2009).

which the witness said counsel would not want him to testify, he decided that "it would not have been a good idea at all to put him on the stand." Smith's trial counsel spoke to Smith about calling Lyles to testify, and Smith agreed with his counsel's assessment that "it could be dangerous to put Mr. Lyles up." Under these circumstances, the decision not to call Lyles was a matter of reasonable trial strategy, and we discern no deficient performance.

3. Finally, Smith argues that the trial court erred by denying his motion for new trial because the State improperly intimidated Lyles about testifying in the case. At the motion for new trial hearing, Lyles testified that, on the day of trial, the prosecutor told him that Smith had accused Lyles of being involved in the robbery, and this upset him. But counsel for the State also testified at the hearing and denied making any threats to Lyles or making any statement to Lyles that Smith had accused him of being involved. This conflicting testimony was for the trial court to resolve,[14] which it explicitly did in favor of the State. Accordingly, we discern no error.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[14] See *Coggins v. State*, 293 Ga. 864, 866 (5) (750 SE2d 331) (2013) ("matters of credibility . . . were for the trial court to resolve based on the evidence presented at the motion for new trial hearing").